Exhibit 1

## CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs and Class Representatives Kelleen Reagan, Marcia Berger, Tammy Johnson, Harvey Williams, Jannette Kern, Ashley Lill, Charles Foster, James Buechler, Sue Flynn, Tiffany Carlson, Connor Staponski, Shannon Proulx, Stephanie Romero, Shanda Marshall, Owen Woodall, David Starnes, Chanler Potts, Vollie Griffin, Henry Franco, Jr., Robert Lee, and Crystal Fabela, and Defendants Nunn Milling Co. and Midwestern Pet Foods, Inc. (collectively, the "Parties" and individually, a "Party"), hereby enter into this Agreement, subject to the approval of the Court, which provides for the settlement and final resolution of the Action defined below.

## I.    RECITALS

WHEREAS, Plaintiffs are named plaintiffs and proposed class representatives in the Action, which is a proposed class action lawsuit against Defendants in the United States District Court for the Southern District of Indiana captioned *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litig.*, Case No. 3:21-CV-00007-RLY-MPB (S.D. Ind.);

WHEREAS, the Action is comprised of the following consolidated lawsuits: *Carlson v. Midwestern Pet Foods, Inc.*, Case No. 3:21-CV-00007-RLY-MPB; *Johnson v. Midwestern Pet Foods, Inc.*, Case No. 3:21-cv-00009-RLY-MPB; *Romero, et al. v. Midwestern Pet Foods, Inc.*, Case No. 3:21-cv-00014-RLY-MPB; *Williams, et al. v. Midwestern Pet Foods, Inc.*, Case No. 3:21-cv-00022-RLY-MPB; *Foster, et al. v. Midwestern Pet Foods, Inc.,* Case No. 1:21-cv-00360-PJH-TAB; and *Marshall v. Midwestern Pet Foods, Inc.*, Case No. 3:21-cv-00050-RLY-MPB;

WHEREAS, the Court consolidated the actions for all purposes on March 29, 2021 (ECF No. 19);

WHEREAS, the Plaintiffs in the consolidated action and their counsel have worked together cooperatively to prosecute the action on their own behalf and on behalf of proposed class members;

WHEREAS, the nature of the action is detailed in the Consolidated Class Action Complaint, (ECF No. 48), which alleges, among other things, that Defendants marketed and sold pet food products contaminated with dangerous levels of aflatoxin, which can cause serious injury and death, and other pet food products contaminated with *Salmonella*, which can make pets sick;

WHEREAS, Plaintiffs assert claims for breach of express warranty, breach of the implied warranty of merchantability, breach of statutory warranty of merchantability, fraudulent concealment, negligence, negligent misrepresentation, intentional misrepresentation, and unjust enrichment and for violations of Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Georgia's Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.*; Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; 720 ILCS 295/1a; Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3; Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq.*; Louisiana Unfair Trade Practices and Consumer Protection Law, La. Stat. Ann. § 51:1401, *et seq.*; Maryland Consumer Protection Act, Md. Code Com. Law § 13-101, *et seq.*; Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, *et seq.*; Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010,

*et seq.*; New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*; New York General Business Law § 349; N.Y. Gen. Bus. Law § 350; North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*; Oklahoma Consumer Protection Act, Okla. Stat. Tit. 15 § 751, *et seq.*; Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*; and the Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.*

WHEREAS, Each Defendant denies that Plaintiffs' claims are meritorious, denies that the Plaintiffs or anyone was damaged as a result of its conduct, and denies that it is liable to Plaintiffs or any member of the Settlement Class for any of the matters asserted in the Action;

WHEREAS, Defendants filed an answer on September 23, 2021 (ECF No. 71);

WHEREAS, prior to reaching this proposed Settlement, the Parties exchanged discovery and engaged in motion practice;

WHEREAS, the Parties engaged the Honorable Wayne R. Andersen (Ret.) of JAMS to mediate and oversee settlement negotiations in this action. The Parties met with Judge Andersen for two mediation sessions on December 21, 2021 and April 5, 2022. While the case did not resolve at those mediation sessions, the Parties continued to discuss settlement with Judge Andersen for several months through July 2022;

WHEREAS, with Judge Andersen's assistance, the Parties reached an agreement in principle on July 5, 2022, to resolve the Action and subsequently memorialized the terms of their settlement in this Agreement, including the attached exhibits; the Parties' negotiations have at all times been at arms-length;

WHEREAS, Plaintiffs, by and through Class Counsel, have (a) made a thorough investigation of the facts and circumstances surrounding the allegations in the Action; and (b) investigated the claims asserted in the Action, including but not limited to by (i) researching, reviewing, and analyzing industry data, information, and public reports; (ii) collaborating with and interviewing consultants and experts; (iii) reviewing and analyzing documents produced by Defendants and third parties; and (iv) investigating the law applicable to the claims asserted in the Action, including the defenses that would likely be asserted;

WHEREAS, Class Counsel are experienced in this type of litigation, recognize the costs and risk of continued prosecution of the Action, and believe that it is in Plaintiffs' and all Settlement Class Members' interest to resolve this Action as set forth herein;

WHEREAS, Defendants have concluded that settlement is desirable to resolve, finally and completely, all pending and potential claims of Plaintiffs and all Settlement Class Members relating to the alleged practices at issue;

WHEREAS, the Parties believe that this Agreement offers significant benefits to Settlement Class Members and is fair, reasonable, adequate, and in the best interest of Class Members; and

WHEREAS, by executing this Agreement, the Parties intend to settle and dispose of, fully and completely, both individually and on a class-wide basis, all claims, demands, and causes of action alleged in the Action, as more fully set forth in this Agreement.

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the Parties, as follows:

## II.    DEFINITIONS

As used throughout this Agreement, the following words and terms shall have the meaning set forth below.  Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

"Action" means *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litig.*, Case No. 3:21-CV-00007-RLY-MPB, which is pending in the United States District Court for the Southern District of Indiana, including all of the cases consolidated therein.

1.      "Agreement" means this Settlement Agreement, including, without limitation, all of the attached exhibits.

2.      "Claim Forms" means the forms attached as Exhibit A which Class Members can access on the Settlement Website and which can be completed in hardcopy form or electronically on the Settlement Website.  Claim Forms include the form attached to the mailed Class Notices for refunds for Midwestern Pet Foods Products.

3.      "Class Notice" refers to the direct mail and email notices to be sent to Settlement Class Members, which shall be substantially in the form attached hereto as Exhibit B.

4.      "Class Counsel" means Rosemary M. Rivas of the law firm of Gibbs Law Group LLP, Jeffrey S. Goldenberg of Goldenberg Schneider, L.P.A., and Kenneth A. Wexler of Wexler Boley & Elgersma LLP.

5.      "Court" refers to the court presiding over this Action, the United States District Court for the Southern District of Indiana.

6.       "Consumer Food Purchase Claims" means claims solely for reimbursement of the costs associated with the purchase of Midwestern's Pet Food Products by Settlement Class Members who have not been reimbursed for such costs to date, including through return or exchange of the Midwestern's Pet Food Products. Any Consumer Food Purchase Claim will specifically exclude any amounts that Midwestern has already paid to the Settlement Class Members or on their behalf as part of Midwestern's Claims Process or amounts paid to Settlement Class Members by retailers following the recall.

7.      "Cy Pres Recipient" means the charitable organization(s) jointly selected by Defendants and Class Counsel, and as approved by the Court, to receive any funds remaining from the Net Settlement Fund after the payment of all Valid Claim Forms pursuant to the Plan of Allocation.

8.      "Date of Finality" means the first date after the Court enters a Final Approval Order and all appellate rights with respect to that order have expired or been exhausted in such a manner as to affirm the order.

9.      "Defendants" means Nunn Milling Co. and Midwestern Pet Foods, Inc.

10.       "Defendants' Counsel" means Justin M. Penn of Hinshaw & Culbertson LLP.

11.      "Pet Injury Claims" means claims seeking damages allegedly incurred by Settlement Class Members whose pets consumed any of the Midwestern's Pet Food Products and where the Settlement Class Member incurred any economic loss related to their pet's ingestion of

aflatoxin or Salmonella through the consumption of the Midwestern Pet Food Products.  Pet Injury Claims include losses incurred by breeders.

12.    "Final Approval Hearing" means the hearing at which the Court evaluates whether to enter a Final Approval Order.

13.    "Final Approval Order" means the Court order entered under Federal Rule of Civil Procedure 23(e)(2) approving this Agreement and the Parties' Settlement, certifying the Settlement Class under Rule 23(a) and (b)(3), and appointing Class Counsel under Rule 23(g).

14.    "Household" means all persons or entities who share a physical address. For all corporations, partnerships, business organizations or associations, or other type of legal entity, there can be only one physical address used even if there are multiple locations.

15.    "Midwestern's Claims Processes" means the claims process in which Midwestern reimbursed consumers directly for Consumer Food Purchase Claims or Pet Injury Claims upon an individual evaluation of each alleged claimant or issued refunds for the purchase of Midwestern's Pet Food Products.

16.     "Midwestern Pet Food Products" means the pet foods listed in Exhibit C sold to consumers in the United States that were included in Defendants' recalls announced on December 30, 2020, January 11, 2021, and March 26, 2021. The definition of Midwestern Pet Food Products specifically excludes other food products produced by Midwestern that are not specifically listed in Exhibit C.

17.    "Midwestern Released Parties" means Defendants.

18.    "Net Settlement Sum" means the Settlement Amount less all of the following: (i) the reasonable costs incurred for the administration of the settlement, including dissemination of Class Notice and evaluating and processing claims, (ii) Class Counsel's attorneys' fees as approved by the Court, (iii) reimbursement of Class Counsel's litigation expenses as approved by the Court, (iv) the service award payments to the class representatives as approved by the Court, and (v) any federal or state tax owed, if any, on any income earned by the Settlement Amount after it is deposited into the Escrow Account.

19.    "Notice Date" means the date the Settlement Administrator begins to issue the Class Notice.  The Settlement Administrator shall complete the process of issuing Class Notice by mail and email no more than 45 days after the Notice Date.

20.    "Plaintiffs" and "Class Representatives" mean Kelleen Reagan, Marcia Berger, Tammy Johnson, Harvey Williams, Jannette Kern, Ashley Lill, Charles Foster, James Buechler, Sue Flynn, Tiffany Carlson, Connor Staponski, Shannon Proulx, Stephanie Romero, Shanda Marshall, Owen Woodall, David Starnes, Chanler Potts, Vollie Griffin, Henry Franco, Jr., Robert Lee, and Crystal Fabela.

21.     "Plaintiffs' Counsel" means Class Counsel as defined above, Liaison Counsel and the Executive Committee as approved by the Court,  and any other law firms that participated in this Action with the approval of Class Counsel.

22.    "Plan of Allocation" means the allocation of the Net Settlement Sum to various types of losses, including: (a) refunds for Midwestern Pet Food Products; (b) payments for illness, injuries or death to pets and related losses including payments for the purchase price of deceased pets or replacement pets; (c) payments for medical expenses, including ongoing treatment; (d)

payments for funeral/cremation costs; and (e) payment for losses related to injured, sick, or dead breeding animals. The Plan of Allocation is attached as Exhibit D and is subject to the Court's approval. Any funds remaining from the Net Settlement Fund after the payment of all Valid Claim Forms pursuant to the Plan of Allocation shall be paid to the Cy Pres Recipient. The Plan of Allocation includes a process for Settlement Class Members to appeal claim valuations.

23.     "Preliminary Approval Order" means the order that the Court enters under Federal Rule of Civil Procedure 23(e)(1), directing Notice to all Settlement Class Members based on the Parties' showing that the Court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the Settlement Class for purposes of judgment on the proposal.

24.     "Proof of Purchase" means acceptable documentation that provides proof of purchase of Midwestern's Pet Food Products. Acceptable documentation includes receipts, copies of receipts, loyalty card records, packaging bearing the SKU of Midwestern's Pet Food Products defined by paragraph 15 and listed in Exhibit C or other legitimate, documentary proof showing payment to a retailer or a Defendant.

25.     "Released Claims" means all known and unknown claims to the fullest extent permitted by law against the Settling Defendants relating to any alleged claims related to the Settling Defendants' recalls of Midwestern's Pet Food Products due to levels of Aflatoxin and Salmonella exceeding acceptable limits pronounced by the U.S. Food and Drug Administration, as alleged in *In re: Midwestern Pet Foods Marketing, Sales Practices, and Prod. Liab. Litig*., Case No. 3:21-cv-00007-RLY-MPB (S.D. Ind. July 26, 2021). This Release includes equitable, injunctive, and monetary claims within the scope of the Settlement Class definition. Claims against Scoular are not released.

26.     "Settlement" means the resolution of this Action as provided for and effectuated by this Agreement.

27.     "Settlement Administrator" means the third-party notice and administration provider agreed upon by the Parties and approved by the Court. Class Counsel and Defendants may, by agreement, substitute a different Settlement Administrator, subject to Court approval. The Parties agree that Epiq shall be retained to implement the claims and settlement requirements of this Agreement.

28.     "Settlement Fund" means the amount of six million and three hundred seventy-five thousand U.S. dollars ($6,375,000.00).

29.     "Settlement Class" means all persons and entities residing in the United States who purchased one or more of the Midwestern Pet Food Products. Excluded from this Settlement Class are: the plaintiffs in *Simmons v. Midwestern Pet Foods, Inc*., Case No. 6:21-cv-03012 (W.D. Mo. 2021); persons or entities whose claims are solely based upon the purchase of Midwestern Pet Food Products for resale; corporate officers, members of the board of directors, and senior management of Defendants; Settlement Class Members who previously contacted Defendants prior to and during the pendency of this litigation, signed a release and in exchange received financial compensation from Defendants; any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation; any members of the Settlement Class that opt out prior to the opt out deadline; any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; and Class Counsel.

30. "Settlement Class Member" refers to any person who falls within the definition of the Settlement Class and who does not validly exclude themselves from the Settlement Class pursuant to the procedure set forth in the Preliminary Approval Order.

31. "Valid Claim Form(s)" means a Claim Form submitted by a Settlement Class Member that is determined to be valid and not fraudulent by the Settlement Administrator and: (a) is submitted in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is accurately, fully and truthfully completed and executed under penalty of perjury with all of the information requested in the Claim Form by a Settlement Class Member on the initial submission; (c) is signed physically or by e-signature by a Settlement Class Member or Person with authority to sign for and bind a Settlement Class Member, subject to penalty of perjury; and (d) is returned via mail and postmarked by the Claims Deadline or received by mail or on-line submission by midnight of the Claims Deadline Eastern Standard Time.

## III.    CERTIFICATION OF SETTLEMENT CLASS

1. As part of the settlement approval process contemplated in Federal Rule of Civil Procedure 23(e), the parties shall cooperate to seek certification of the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(3), including the appointment of Class Counsel under Federal Rule of Civil Procedure 23(g).

2. In entering into this Agreement, Defendants do not concede that certification of a litigation class would have been appropriate in this Action.

3. In the event that the Court does not enter a Final Approval Order (or if a Final Approval Order is reversed on appeal), Plaintiffs and Class Counsel will be precluded from using the provisions of this Section or the Court's certification of the Settlement Class to suggest that a litigation class should be certified.

## IV.    APPOINTMENT OF SETTLEMENT ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR DUTIES

1. As part of the settlement approval process contemplated in Federal Rule of Civil Procedure 23(e), the parties shall request that the Court appoint the Settlement Administrator.

2. The Settlement Administrator will be required to agree to all of the terms and conditions of this Agreement relating to the administration of the Settlement.

3. The Settlement Administrator will be responsible for administering the Settlement, which will include, among other tasks:

a. Maintaining reasonably detailed records of its activities under this Settlement as are required by applicable law in accordance with its normal business practices, and such records will be made available to Class Counsel, Defendants' Counsel, the Parties, and their representatives promptly upon request;

b. Providing reports and other information to the Court as the Court may require, including, should the Court request or should it be reasonably advisable to do so, a timely report to the Court summarizing the work performed by the Settlement Administrator;

c. Creating, administering, and overseeing the Settlement Fund which includes overseeing the claim appeal process as contained in the Plan of Allocation;

d. Providing Notice to Settlement Class Members in accordance with the Notice Plan, attached as Exhibit E;

e. Establishing and maintaining the Settlement Website which shall, at a minimum, contain important dates and deadlines, frequently asked questions, important pleadings, claim forms, class notices, and permit Class Members to file their claims electronically.

f. Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries;

g. Responding to any mailed or emailed Settlement Class Member inquiries;

h. Forwarding to Defendants' Counsel and Class Counsel, upon request, copies of all documents and other materials relating to the administration of the Settlement;

i. Receiving requests from Class Members to exclude themselves from the Settlement Class and providing to Class Counsel and Defendants' Counsel a copy thereof upon receipt. If the Settlement Administrator receives any requests for exclusion from Class Members after the Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;

j. Providing reports and summaries, as requested, to Class Counsel and Defendants' Counsel, including without limitation, reports regarding the number of Claim Forms received and the identity of the Settlement Class Members;

k. Employing reasonable procedures to screen Claims Forms for waste, fraud, and abuse and rejecting a Claim Form, or any part of a claim for a payment reflected therein, where the Settlement Administrator determines that there is evidence of fraud. The Settlement Administrator will review each Claim Form based upon the initial submission by a Settlement Class Member and ensure that each is complete, properly substantiated and, based on the substantiation, determine the appropriate benefit to be paid, if any, in accordance with the terms of this Agreement. The Settlement Administrator may consult with experts, as necessary, to evaluate claims, claimed damages, and supporting documentation.

l. Issuing Settlement Checks. All checks issued pursuant to this Settlement shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a check is not cashed within sixty (60) days after the date of issue, the Settlement Administer is authorized to send by mail (and if available an e-mail) and/or place a telephone call to that Settlement Class Member reminding him/her of the deadline to cash such check. To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the check will be void;

m. Considering claims submitted with a Claim Form and received by the Settlement Administrator or postmarked by the Claims Deadline. The Claims Deadline shall be clearly set forth in the Class Notice, the Settlement Website, and on the Claim Form. Settlement Class Members who fail to submit a Claim Form by the Claims Deadline shall not be eligible for a payment;

n. Making the Claim Forms available on the Settlement Website. The Claim Forms will be mailed to Settlement Class Members upon request by calling or writing to the Settlement Administrator. Settlement Class Members may submit their completed and signed Claim Forms to the Settlement Administrator by such means as proscribed by the Notice on or before the Claims Deadline;

o. Processing and transmitting Settlement Payments to Settlement Class Members and, if necessary, process and transmit any residual Unpaid Funds to the Cy Pres Recipient;

p. In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies all Requests for Exclusion and/or objectors. Such declaration shall be provided to Defendants' Counsel and Class Counsel for filing with the Court no later than fourteen (14) days prior to the Final Approval Hearing; and

q. Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or Defendants' Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

4. Limitation of Liability. The Parties, Class Counsel, Plaintiffs' Counsel, and Defendants' Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

5. Indemnification. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of the Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

6.      Privacy. The Settlement Administrator shall take reasonable measures to the extent permitted by law to assert and to protect the privacy rights of Settlement Class Members, including by maintaining the confidentiality and security of and preventing the unauthorized access or acquisition of any financial or personal information submitted in connection with any claim for benefits pursuant to this Settlement Agreement. In the event of any unauthorized access to or acquisition of personal information concerning any Settlement Class Member as a direct result of the intentional or negligent acts or omissions of the Settlement Administrator, the Settlement Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Settlement Class Members, and/or other persons or entities.

7.      Discretion of Settlement Administrator. Epiq shall have the discretion to carry out the intent of the Settlement Agreement, subject to the terms of the escrow agreement described in Paragraph V.4 and applicable Orders of the Court.

## V.      SETTLEMENT CONSIDERATION

1.      **Establishment of Settlement Fund**. Defendants shall pay six million and three hundred seventy-five thousand U.S. dollars ($6,375,000.00) for deposit into the Settlement Fund as follows: Defendants shall deposit an initial funding amount of $206,737 within 14 days of entry of the Preliminary Approval Order to cover the initial notice and administration costs.  If the initial notice and administration costs exceed the initial funding amount, Defendants agree to pay the additional notice and administration costs in a timely manner.  Within ten days following the Date of Finality, the Settling Defendants shall pay the remaining amount of the $6,375,000 (net of the notice and initial administration costs already paid) into a qualified settlement fund as directed by Plaintiffs.

2.      **Non-Reversionary.**  The Settlement Fund is non-reversionary.  As of the Date of Finality, all rights of Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated pursuant to the terms of this Agreement.

3.      **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator shall be the "administrator," within the meaning of Treasury Regulation § 1.468B-2(k)(3), and shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide a detailed accounting of any and all

funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

4.     **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with this Agreement.

5.     **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses, if any; (iii) Service Award Payments as approved by the Court; (iv) Attorneys' Fee Award and Costs as approved by the Court; (v) Settlement Payments, and (vi) any payments to the Cy Pres Recipients as approved by the Court. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

6.     **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund, if any, shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Participating Settlement Class Member and Cy Pres Recipient shall be solely responsible for the federal, state, local, and other tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement. The Settlement Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulation Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992), and the Parties shall treat the Settlement Fund consistently therewith for all reporting purposes under the United States federal tax laws. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "escrow agent." As the escrow agent, the Settlement Administrator shall timely and properly file all required federal and state informational and other tax and informational returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulations Section 1.468B-2(k)). Such returns shall be consistent with this paragraph and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the income earned by the Settlement Fund. Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without prior order from the Court. The Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from the income earned by the Settlement Fund any funds necessary to pay such taxes, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treasury Regulations Section 1.468B2(1)(2)). The Settlement Administrator shall maintain accurate records of all expenditures

made pursuant to this paragraph, and shall provide the records upon request to Class Counsel and Defendants' Counsel. None of the Parties, or any of their counsel, shall have any responsibility for the payment of taxes described in this paragraph (other than, in the case of each Class Representative and Settlement Class Member, the payment of federal, state, local and other tax consequences to him, her or it due to the receipt of funds from the Settlement Fund pursuant to this Agreement). The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph. The Parties further agree that the costs of claims administration will be excluded from the Settlement Fund for tax purposes.

7. **Enhancements to Defendants' Safety Protocols.** As part of this settlement, Defendants have represented to Plaintiffs that since the recalls and the institution of this litigation, Midwestern Pet Foods has implemented a number of food safety related enhancements in coordination with and under the direction of industry experts and third-party consultants, which have been subsequently reviewed by the US Food and Drug Administration under Title 21 CFR, Part 507, Code of Federal Regulations. Specifically, Midwestern Pet Foods represents that it has spent millions of dollars making capital improvements to its food safety programs including new conveyance equipment, new testing and sampling equipment and numerous facility improvements. Additionally, it represents that has hired new Food Safety personnel and implemented enhanced raw material, finished product and environmental testing protocols.

## VI.    PAYMENTS TO SETTLEMENT CLASS MEMBERS

1. **Monetary Relief**. Settlement Class Members shall be eligible to receive monetary relief from the Settlement Fund by submitting a Valid Claim Form. Each Claim Form shall provide the opportunity for a Settlement Class Member to demonstrate eligibility for the payment of Pet Injury Claims and/or Consumer Food Purchase Claims. A Settlement Class Member may, but is not required to, submit both a Pet Injury Claim and a Consumer Food Purchase Claim.

2. **Claims Process**. Each Settlement Class Member shall be entitled to submit a Claim that will, if valid, entitle the Settlement Class Member to a cash payment consistent with the Plan of Allocation as approved by the Court. The period for submitting such claims shall commence upon the Notice Date and continue for no less than 90 days (the "Notice Period"). The Settlement Administrator shall, subject to the supervision of the Court, administer the relief provided by this Settlement by processing Claim Forms in a rational, responsive, cost effective and timely manner. All available monies in the Net Settlement Fund will be paid out to Settlement Class Members or, to the extent there are any residual Unpaid Funds after any additional distribution, paid on the Settlement Class' behalf to the Cy Pres Recipient. Monies will be distributed to Settlement Class Members pursuant to the following claims process:

3. **Settlement Class Members Who Have Pet Injury Claims.** Settlement Class Members asserting a Pet Injury Claim shall provide documentation showing injury or death, screening or treatment of the pet for signs consistent with consumption of aflatoxin or Salmonella as a result of the use or consumption of Midwestern Pet Food Products. Acceptable forms of documentation include, but are not limited to: veterinary notes, veterinary records, test or laboratory reports, letters, emails, or statements from the veterinarian, hospital or clinic.

Declarations provided by the pet owner describing the ailments and/or injuries to their pets may be acceptable if substantial detail is provided; however, valid Pet Injury Claims supported solely by a declaration from the pet owner will be paid at a lower amount as required by the Plan of Allocation.

4.      **Settlement Class Members who Previously Contacted Defendant (No Release Signed)**. Settlement Class Members who previously contacted Defendants prior to and during the pendency of this litigation, did not sign a release, and received financial compensation from Defendants as a result of that contact will be considered for additional compensation but only if they have not already been compensated fully in a manner consistent with the Plan of Allocation.

5.      **Pet Injury Claims**. Settlement Class members who submit valid Pet Injury Claims showing injury or death, screening or treatment of the pet for signs consistent with consumption of aflatoxin or *Salmonella* as a result of the use or consumption of Midwestern Pet Food Products will be eligible to receive payments for, including but not limited to, the following: payments for illness, injuries or death to pets and related losses including payments for the purchase price of deceased pets or replacement pets; payments for medical expenses, including ongoing treatment; payments for funeral/cremation costs; and payments for losses related to injured, sick or dead breeding animals.  Pet Injury Claims also include claims for screening costs that were reasonably necessary based on concern for having a pet that consumed Midwestern Pet Food Products. Pet Injury Claims seeking payments for the purchase price of deceased pets or replacement pets; payments for medical expenses, including ongoing treatment; payments for funeral/cremation costs; and payments for losses related to injured, sick or dead breeding animals, must include documentation sufficient to show the purchase price of deceased pets or replacement pets; payments for medical expenses, including ongoing treatment; payments for funeral/cremation costs; and payments for or records demonstrating losses related to injured, sick or dead breeding animals, and Settlement Class members seeking to recoup such amounts must verify, under penalty of perjury, that the documentation provided is accurate and legitimate.  Acceptable forms of documentation include receipts, invoices, contracts, breeding business records (e.g., sales records, profit and loss statements or other similar reports), declarations, and tax documents. Class members seeking payments for losses related to injured, sick or dead pets used for profit (breeding) must also provide a copy of their commercial license or other state or federal permit (if required) that was valid at the time the pet died, became injured or sick. Pet Injury Claims shall be paid in accordance with the Court-approved Plan of Allocation.  Each Pet Injury Claim is subject to an initial $150,000 cap. This cap may be adjusted upward if adequate funds are available in the Net Settlement Fund after each Valid Claim Form is valued at 100% of its approved amount.

6.      **Pet Injury Claim Review**. The Settlement Administrator is authorized (in conjunction with a veterinarian or other expert, if necessary, selected by Class Counsel and approved by Defendants) to review the documents submitted in connection with Pet Injury Claims and to investigate, evaluate, and make a determination as to the validity of the claim based on the documentation submitted and any other materials determined to be relevant and obtained during the claim evaluation process. By submitting a Pet Injury Claim, the Settlement Class Member is authorizing the Settlement Administrator, in its discretion, to contact the treating veterinarian of the Settlement Class Member's allegedly injured pet, to verify payments the Settlement Class Member seeks to recoup, to seek the input of Class Counsel and/or Defendants' Counsel, and to

fully investigate and make a determination as to the validity of the claim based on the documentation submitted and any other materials determined to be relevant. The Settlement Administrator may contact the Settlement Class Member to obtain more information, to verify certain facts or to seek answers to questions, or to obtain more documentation concerning or relating to a Pet Injury Claim.

7.      **Requests for Additional Proof and Claim Review Process**. For any Pet Injury Claim, the Settlement Administrator, Class Counsel, Defendants, a mediator jointly selected by the Parties, or the Court may request additional proof, including testimony under oath. Any Pet Injury Claim submitted seeking reimbursement or the payment of an amount below $3,000 shall be resolved by the Settlement Administrator in its discretion, and in consultation with Class Counsel about such claims. Any Pet Injury Claim submitted seeking reimbursement or the payment of an amount greater than $3,000  will be paid only upon the recommendation of the Settlement Administrator and approval of Class Counsel. If Defendants' Counsel or Class Counsel has a good faith belief that a particular claim seeking reimbursement above $3,000 requires additional review, Defendants' Counsel and Class Counsel shall meet and confer about the claim. If the Parties are unable to agree after the meet and confer process, Class Counsel and/or Defendants' Counsel have the right to request that the claim be reviewed by a mediator jointly selected by the Parties, whose time will be paid from the Settlement Fund for making these determinations. While the Settlement Administrator and/or Class Counsel may, in their discretion, seek input from Defendants and Defendants' Counsel about a claim, neither Defendants nor Defendants' Counsel is obligated to review all claims.

8.      **Settlement Class Members Who Have Consumer Food Purchase Claims**. Settlement Class Members may submit a Consumer Food Purchase Claim for up to the full price of the purchased Midwestern Pet Food Products as further described below. Each Settlement Class Member may elect to submit either a (i) Consumer Food Purchase Claim with Proof of Purchase; or (ii) Consumer Food Purchase Claim without Proof of Purchase, but may not submit both.

9.      **Consumer Food Purchase Claims With Proof of Purchase**. Settlement Class Members who complete the Claim Form and provide valid Proof of Purchase showing their actual purchase(s) of Midwestern Pet Products during the Settlement Class Period and the purchase price of the Midwestern Pet Products purchased shall receive a refund of the full price of the Midwestern Pet Food Products as set forth on their Proof of Purchase consistent with the Plan of Allocation as approved by the Court. The Settlement Administrator shall have the right to determine the validity of such claims and may investigate and request reasonable additional information in order to avoid fraud.

10.     **Consumer Food Purchase Claims Without Proof of Purchase**. Settlement Class Members who complete the Claim Form and do not provide valid Proof of Purchase showing their actual purchase(s) of Midwestern Pet Food Products during the Settlement Class Period shall receive $25 per bag for up to two (2) bags of Midwestern Pet Food Products claimed to have been purchased. The Settlement Administrator shall have the right to determine the validity of such claims and may investigate and request reasonable additional information in order to avoid fraud.

11.     **Plan of Allocation**. All initial proposed payments for Valid Claim Forms shall be made from the Net Settlement Fund and shall be calculated consistent with the Plan of Allocation as approved by the Court.  If the total initial proposed payment of all Valid Claim Forms exceeds the amount available in the Net Settlement Fund, minus any covered costs and expenses, each Valid Claim Form's initial proposed payment shall be reduced on a pro rata basis consistent with the Plan of Allocation. If all initial proposed payments for Valid Claim Forms is less than the amount available in the Net Settlement Fund, then each eligible Settlement Class Member who submitted valid Pet Injury Claims shall have their initial proposed payment increased not to exceed more than three-times the initial valuation (e.g., a $1,000 initial proposed payment could be increased up to a $3,000 payment) consistent with the Plan of Allocation. Any such increase shall be capped at $10,000.00.  The Parties, through their Counsel, may request that the Court raise the 200% valuation increase and the $10,000.00 cap, consistent with the Plan of Allocation, if there are additional funds available in the Net Settlement Fund to support such an increase. Sixty days after the settlement payment checks become stale (including after any returned checks are reissued and become stale), the Court may order any remaining residual amounts in the Net Settlement Fund be paid to the Court approved Cy Pres Recipient.

12.     **Returned Checks**. For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administer is authorized to send by mail and if available an e-mail and/or place a telephone call to that Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time.

13.     **Residue of Settlement Fund**. No portion of the Settlement Fund shall revert or be repaid to Defendants after the Effective Date. All funds shall be distributed pursuant to the Plan of Allocation.

14.     **Claims per Household**. Only one Pet Injury Claim Form and one Consumer Food Purchase Claim Form per Household is eligible. Each such Claim Form may include multiple bags of Midwestern Pet Food Products and multiple pets.

## VII.     NOTICE TO THE SETTLEMENT CLASS

1.     CAFA Notice. Within ten (10) days after Preliminary Approval by the Court, Defendants shall serve notices of the Settlement on state and federal regulatory authorities as required by Section 3 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notices"). Defendants shall simultaneously serve copies of the CAFA Notices on Settlement Class Counsel. In the event that a state or federal official raises concerns about the Settlement, the Parties and their counsel agree to work together in good faith to resolve those concerns. Defendants shall pay any costs associated with any CAFA Notices.

2.      Notice Program. Upon entry of Preliminary Approval, the Settlement Administrator shall implement the Notice Program provided herein as Exhibit --, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of this Settlement; a date by which Settlement Class Members may object to this Settlement; a date by which Settlement Class Members may exclude themselves from this Settlement, the date upon which the Final Approval Hearing shall occur; and the address of the Settlement Website at which Settlement Class Members may access this Settlement and other related documents and information and file claims. Under Class Counsel's supervision, the Settlement Administrator shall design and develop a Notice Program that is reasonably practicable under the circumstances, complies with due process and the requirements of Rule 23, and complies with the directions and guidance from the Court.  At a minimum, the Notice Program shall include direct mail and/or email notice to Settlement Class Members whose contact information is reasonable available,  reminder notices as necessary, a digital ad campaign designed to maximize Settlement Class Member participation in the Settlement, third party subpoenas issued to the top 10 retailers of Midwestern Pet Food Products, and a user-friendly settlement website,

## VIII.   REQUESTS FOR EXCLUSION

1.      The provisions of this section shall apply to any request by any person or entity who falls within the defined Settlement Class for exclusion from the Settlement Class.

2.      Any such person or entity may request exclusion by submitting such request in writing as set forth in the Class Notice.

3.      Any request for exclusion must be received not later than the date specified in the Preliminary Approval Order which date shall be no earlier than sixty days after the Settlement Administrator begins to mail and email notices.

4.      Any request for exclusion shall (i) state the person or entity's full name and current address, and (ii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Settlement Class.

5.      Failure to comply with these requirements and to timely submit the request for exclusion will result in the person or entity being bound by the terms of the Settlement Agreement.

6.      Any person or entity who submits a timely request for exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Agreement.

## IX.    PROCEDURE FOR OBJECTIONS

1.      Any Settlement Class Members who do not exclude themselves and wish to comment on or object to the Settlement or the award of fees and expenses as requested by Class Counsel must do so in accordance with the terms of this Section VIII and the Preliminary Approval Order.

2.      Settlement Class Members who fail to submit written objections that are both timely and in full compliance with the requirements of this Section will be deemed to have waived their objections to the Settlement and will be foreclosed and barred forever from making any objection (whether by appeal or otherwise) to the Settlement.

3.     The Settlement Class Member must mail a letter that is received no later than the date specified in the Preliminary Approval Order which date shall be no earlier than sixty days after the Settlement Administrator begins to mail and email notices and the comment or objection must contain the following:

    a.  The name and case number of this lawsuit, *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litig.*, Case No. 3:21-CV-00007-RLY-MPB (S.D. Ind.);

    b.  The Settlement Class Member's full name, mailing address, and email address or telephone number;

    c.  If objecting, the Settlement Class Member must state whether the objection applies only to the objector, or to a specific subset of the Class, or to the entire Class;

    d.  All reasons for the objection or comment and sufficient proof establishing that he or she is a Settlement Class Member;

    e.  A statement identifying the number of class action settlements the Settlement Class Member or their attorney has objected to or commented on in the last five years;

    f.  Whether the Settlement Class Member intends to personally appear at the Final Approval Hearing;

    g.  The name and contact information of any and all attorneys representing, advising, or assisting the Settlement Class Member, including any counsel who may be entitled to compensation for any reason related to the objection or comment;

    h.  Whether any attorney will appear on the Settlement Class Member's behalf at the Final Approval Hearing, and if so the identity of that attorney; and

    i.  The Settlement Class Member's signature.

4.     Any lawyer representing or assisting an objecting Settlement Class Member must: (a) file a notice of appearance with the Court by the date set forth in the Preliminary Approval Order; (b) file a sworn declaration attesting to representation of each Settlement Class Member on whose behalf the lawyer has acted or will be acting; and (c) comply (and ensure their client's compliance) with each of the above requirements.

5.     No Settlement Class Member will be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel), unless their timely objection or comment states their intention to appear at the Final Approval Hearing.

## X.     ATTORNEY'S FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

1.     Class Counsel will file with the Court an application for an award of attorneys' fees in an amount not to exceed 33.33% of the Settlement Fund as well as reimbursement of the reasonable litigation expenses incurred in the prosecution of the Action, not to exceed $125,000.

2.     Any award of attorneys' fees and reimbursement of litigation expenses that the Court approves will be paid from the Settlement Amount within ten (10) business days following the Date of Finality or the entry of the order awarding fees and litigation expenses, whichever is

later, by means of a wire transfer by the Settlement Administrator to an account that Class Counsel designates.

3.      Attorneys' fees and expenses awarded by the Court shall be allocated among Plaintiffs' Counsel in a manner that, in Class Counsel's opinion, fairly compensates them for their respective contribution to the progress of and results obtained in the Action.

4.      Class Counsel will file with the Court an application for approval of service awards to each of the Plaintiffs who are serving as class representatives in an amount up to $3,500 per Plaintiff.  The service awards will be paid from the Settlement Fund.

5.      The Settlement Administrator will pay any such Court-approved service awards no later than ten (10) business days following the Date of Finality or the of the entry of the order awarding the service awards, whichever is later, by mailing via first class United States mail a check in the approved amount payable to the recipient.  The Settlement Administrator will include with each Service Award check a Form 1099 to the extent such form is required.

## XI.    MOTION FOR PRELIMINARY APPROVAL

1.      The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement are essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this settlement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and information reasonably necessary or appropriate to carry out the terms of this Settlement and the transactions contemplated hereby.

2.      Plaintiffs will file a motion requesting the Court enter a Preliminary Approval Order, which will accomplish the following, among other matters:

a.  Find that the requirements of the Federal Rule of Civil Procedure 23€(1) have been satisfied such that the Court will likely be able to approve the Settlement under Rule 23(e)(2) and certify the Settlement Class for purposes of judgment on the proposal;

b.  Find that the procedures set forth in Section VII of this Agreement, including the dissemination of Class Notice, satisfy the requirements of due process, Rule 23, and applicable law and procedure, and approve that manner of providing notice to the Settlement Class;

c.  Set a deadline for requesting exclusion from or objecting to the Settlement; and

d.  Set a date and time for the Final Approval Hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed Settlement.

e.  Establish a Court-approved process to issue third party subpoenas to the top 10 retailers of Midwestern Pet Food Products to obtain contact information for potential Settlement Class Members.

3.      Defendants will cooperate with Plaintiffs in the preparation and filing of the motion seeking a Preliminary Approval Order.

## XII.     FINAL APPROVAL HEARING AND FINAL APPROVAL ORDER

1.     A Final Approval Hearing will be held on a date approved by the Court. The date, time, and place of the Final Fairness and Approval Hearing will be set forth in the Notice and the Preliminary Approval Order, which will both further note that the date and time are subject to change, and that any change will be noted on the Settlement Website.

2.     Class Counsel shall move, before the Final Approval Hearing, for entry of a Final Approval Order that, among other things, will:

    a.  Approve this Agreement without modification (except insofar as agreed upon by the Parties) as fair, reasonable, and adequate to, and in the best interest of, the Settlement Class, and direct its implementation according to its terms;

    b.  Find that the form and manner of class notice implemented pursuant to this Agreement (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, the right to object to or exclude themselves from the proposed Settlement, and the right to appear at the Final Approval Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

    c.  Find that all Settlement Class Members except those who have properly excluded themselves will be bound by this Settlement and Agreement, including the release provisions and covenants not to sue;

    d.  Direct that judgment be entered immediately dismissing with prejudice all individual and class claims asserted in the Action and ruling that no costs or fees be assessed on any Party beyond the attorneys' fees and expenses provided for in Section X of this Agreement;

    e.  Incorporate the releases and covenants not to sue and forever bar any claims, causes of action, or liabilities by Settlement Class Members that have been released by reason of this Agreement;

    f.  Approve the payments provided for in this Agreement to the Settlement Class Members consistent with the Plan of Allocation and the Service Awards to Plaintiffs and make any necessary findings with regard to these approvals;

    g.  Approve the award of attorneys' fees and reimbursement of litigation costs to be paid to Class Counsel and make any necessary findings with regard to those approvals; and

    h.  Retain jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of this Agreement.

## XIII.   RELEASE

1.     The Release. Upon the Date of Finality, and in consideration of the Settlement benefits described herein, each Releasing Party shall be deemed to have released, acquitted, and forever discharged Defendants and each of the Released Parties from any and all Released Claims.

2.     Not a General Release. This section should not be construed as a general release.

3.     Unknown Claims. The Released Claims include the release of Unknown Claims. Upon the Effective Date, Plaintiffs and the Settlement Class shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Upon the Effective Date, each of the Plaintiffs and Settlement Class Members shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiffs and the Settlement Class Members acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Settlement Agreement.

4.     Release of Class Representatives. As of the Date of Finality, Defendants and their representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys absolutely and unconditionally release and discharge the Class Representatives from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to prosecution of the Action, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims by the Parties hereto to enforce the terms of the Settlement).

## XIV.   MISCELLANEOUS

1.     <u>No admission</u>.  Defendants deny any and all claims alleged in the Action and all wrongdoing whatsoever.  This Agreement is neither a concession nor an admission, and will not be used against Defendants as an admission or indication with respect to any claim of any fault, concession or omission by Defendants.

2.      <u>Jurisdiction and Choice of Law</u>.  The Parties hereby irrevocably submit to the jurisdiction of the Court for any dispute arising out of or relating to this Agreement, the applicability of this Agreement, or the enforcement of this Agreement.  All questions with respect to the construction of this Agreement and the rights and liabilities of the Parties will be governed by the laws of the State of Indiana.

3.      <u>Good faith</u>. The Parties, their successors and assigns, and their counsel will cooperate fully with one another and undertake all steps necessary to effectuate the terms and conditions of this Agreement. The Parties agree to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement. The Parties and their respective attorneys will not seek to solicit or otherwise encourage any person to exclude himself or herself from the Settlement Class, object to the Settlement, or appeal from any order or judgment of the Court that is consistent with the terms of this Agreement.

4.      <u>No waivers</u>.  The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

5.      <u>Notice of breach</u>.  If one Party to this Agreement considers the other to be in breach of its obligations under this Agreement, that Party must provide the allegedly breaching Party written notice of the alleged breach and reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

6.      <u>Nullification</u>. If (a) the Court does not enter the Preliminary Approval Order or the Final Approval Order, or (b) the Settlement does not become final for any other reason, this Agreement will be null and void and any order or judgment entered by the Court in furtherance of this Settlement will be treated as void *ab initio*.  In such event, the entire amount paid or caused to be paid by Defendants—but less the costs of administration and notice—shall promptly be returned to Defendants, and the Parties will proceed in all respects as if this Agreement had not been executed. An order denying the Preliminary Approval Motion without prejudice will not constitute a ground for nullifying or terminating the Settlement.  Nor will a change in the law constitute a ground for nullifying or terminating the Settlement.

7.      <u>Representations and Warranties</u>.  Class Counsel represents that: (1) they are authorized by the Plaintiffs to enter into this Agreement; and (2) they are seeking to protect the interests of the Settlement Class. Defendants represent and warrant that the individual(s) executing this Agreement are authorized to enter into this Agreement on behalf of Defendants.

8.      <u>Own Counsel</u>.  Each Party acknowledges that it has been represented by attorneys of its own choice throughout all of the negotiations that preceded the execution of this Agreement and in connection with the preparation and execution of this Agreement.

9.      <u>Notice</u>.  All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement (other than notice of settlement to Settlement Class Members) will be in writing and will be delivered by email and/ or by next-day express mail (excluding Saturday, Sunday, and federal holidays):

If to Class Counsel then:

> Rosemary M. Rivas
> Gibbs Law Group LLP
> 1111 Broadway, Suite 2100
> Oakland, CA 94061

If to Defendants then:

> Justin M. Penn
> Hinshaw & Culbertson LLP
> 151 N. Franklin, Suite 2500
> Chicago, IL 60606

10.  _Notice_.  All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement (other than notice of settlement to Settlement Class Members) will be in writing and will be delivered by email and/ or by next-day express delivery.

11.  _Exhibits_. The exhibits attached to this Agreement are hereby incorporated by reference as though set forth fully herein and are a material part of this Agreement.  Any notice, order, judgment, or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Agreement to become effective.

12.  _Entire Agreement_. This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior oral and written agreements and discussions.  Each Party covenants that it has not entered in this Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein. Each Party further covenants that the consideration recited herein is the only consideration for entering into this Agreement and that no promises or representations of another or further consideration have been made by any person. This Agreement may be amended only by an agreement in writing duly executed by all Parties; provided, however, that after entry of the Final Approval Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary and Final Approval Orders and do not limit the rights of Settlement Class Members under this Agreement.

13.  _Drafting_.  Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same will not be construed against any Party as drafter of this Agreement.

14.  _Counterparts_. This Agreement may be executed with an electronic or facsimile signature and in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

15.  _Headings_.  The headings contained in this Agreement are for reference only and are not to be construed in any way as a part of the Agreement.

16.    <u>Binding Effect</u>.  This Agreement is binding upon and will inure to the benefit of the Parties and their respective heirs, assigns and successors-in-interest.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Settlement Class Members and through Class Counsel, and Defendants, by its duly authorized representatives and through counsel, have executed this Agreement as of the dates set forth below.

**FOR PLAINTIFFS:**

Dated: _____ January 4 , 2023                Gibbs Law Group LLP

                                               By _____
                                                    Rosemary M. Rivas, Class Counsel

Dated: _____ , 2023                    Goldenberg Schneider, L.P.A.

                                               By _____
                                                    Jeffrey S. Goldenberg, Class Counsel

Dated: _____ , 2023                    Wexler Boley & Elgersma LLP

                                               By _____
                                                    Kenneth A. Wexler, Class Counsel

**FOR DEFENDANT**

Dated: _____01/04_____, 2023             Midwestern Pet Foods, Inc.

By_____
                [ Jeff Nunn      ]

Dated: _____01/04_____, 2023             Nunn Milling Co.

By_____

Dated: _____9 JAN_____, 2023             Hinshaw & Culbertson LLP

By_____
                Justin M. Penn, Defendants' Counsel

24

## PLAINTIFFS AND CLASS REPRESENTATIVES

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: 01 / 05 / 2023 _____, 2023

*Kelleen Reagan*
_____
Kelleen Reagan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _01/06/2023_____, 2023

*Tammy Johnson*
_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: 01 / 05 / 2023 _____, 2023

_Harvey E Williams_
_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

## PLAINTIFFS AND CLASS REPRESENTATIVES

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: January 5th _____, 2023

_____
Ashley Lill (Jan 5, 2023 18:11 CST)
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: Jan 8, 2023 _____, 2023

_____
Sue Flynn (Jan 8, 2023 18:10 CST)
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: Jan 4, 2023_____, 2023

_____
Tiffany Carlson (Jan 4, 2023 10:23 EST)
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

## PLAINTIFFS AND CLASS REPRESENTATIVES

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: Jan 5, 2023 _____, 2023

*Connor Staponski*
Connor Staponski (Jan 5, 2023 14:34 AKST)
_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _01 / 05 / 2023__, 2023

_____
*Shannon Proulx*
Shannon Proulx

Dated: _____, 2023

_____
Stephanie Romero

25

**PLAINTIFFS AND CLASS REPRESENTATIVES**

Dated: _____, 2023

_____
Estate of Robert Lee

Dated: _____, 2023

_____
Kelleen Regan

Dated: _____, 2023

_____
Marcia Berger

Dated: _____, 2023

_____
Tammy Johnson

Dated: _____, 2023

_____
Harvey Williams

Dated: _____, 2023

_____
Jannette Kern

Dated: _____, 2023

_____
Ashley Lill

Dated: _____, 2023

_____
Charles Foster

Dated: _____, 2023

_____
James Buechler

Dated: _____, 2023

_____
Sue Flynn

Dated: _____, 2023

_____
Tiffany Carlson

Dated: _____, 2023

_____
Connor Staponski

Dated: _____, 2023

_____
Shannon Proulx

Dated: Jan 6, 2023 , 2023

*Stephanie Romero*
Stephanie Romero (Jan 6, 2023 10:21 MST)
_____
Stephanie Romero

25

Dated: 01 / 05 / 2023 , 2023

*Shanda Marshall*
_____
Shanda Marshall

Dated: _____, 2023
_____
Owen Woodall

Dated: _____, 2023
_____
David Starnes

Dated: _____, 2023
_____
Chanler Potts

Dated: _____, 2023
_____
Vollie Griffin

Dated: _____, 2023
_____
Henry Franco, Jr.

Dated: _____, 2023
_____
Crystal Fabela

Dated: _____, 2023

_____
Shanda Marshall

Dated: 01 / 04 / 2023 , 2023

*Owen Woodall*
_____
Owen Woodall

Dated: _____, 2023

_____
David Starnes

Dated: _____, 2023

_____
Chanler Potts

Dated: _____, 2023

_____
Vollie Griffin

Dated: _____, 2023

_____
Henry Franco, Jr.

Dated: _____, 2023

_____
Crystal Fabela

26

Dated: _____, 2023

_____
Shanda Marshall

Dated: _____, 2023

_____
Owen Woodall

Dated: Jan 8, 2023 _____, 2023

_____
David Starnes (Jan 8, 2023 12:19 CST)
David Starnes

Dated: _____, 2023

_____
Chanler Potts

Dated: _____, 2023

_____
Vollie Griffin

Dated: _____, 2023

_____
Henry Franco, Jr.

Dated: _____, 2023

_____
Crystal Fabela

Dated: _____, 2023

_____
Shanda Marshall

Dated: _____, 2023

_____
Owen Woodall

Dated: _____, 2023

_____
David Starnes

Dated: __01 / 06 / 2023__, 2023

*Chanler Potts*
_____
Chanler Potts

Dated: _____, 2023

_____
Vollie Griffin

Dated: _____, 2023

_____
Henry Franco, Jr.

Dated: _____, 2023

_____
Crystal Fabela

Dated: _____, 2023

_____
Shanda Marshall

Dated: _____, 2023

_____
Owen Woodall

Dated: _____, 2023

_____
David Starnes

Dated: _____, 2023

_____
Chanler Potts

Dated: 1/5/23 _____, 2023

_____
Vollie Griffin

Dated: _____, 2023

_____
Henry Franco, Jr.

Dated: _____, 2023

_____
Crystal Fabela

26

Dated: _____, 2023

_____
Shanda Marshall

Dated: _____, 2023

_____
Owen Woodall

Dated: _____, 2023

_____
David Starnes

Dated: _____, 2023

_____
Chanler Potts

Dated: _____, 2023

_____
Vollie Griffin

Dated: _____, 2023

_____
Henry Franco, Jr.

Dated: Jan 5, 2023 _____, 2023

_____
Crystal Fabela (Jan 5, 2023 18:47 CST)
Crystal Fabela